UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 11-11574-GAO

JOYCE PAUL,
Plaintiff,

v.

MARTHA JOHNSON, as United States Administrator of General Services,
Defendant.

ORDER ADOPTING REPORT AND RECOMMENDATION
September 17, 2013

O'TOOLE, D.J.

The magistrate judge to whom this matter was referred has recommended that the defendant's motion for summary judgment be granted. The plaintiff has filed no objection to the Report and Recommendation. After reviewing the relevant pleadings and submissions, I fully agree with the magistrate judge's recommendations and ADOPT them for the reasons expressed in the Report and Recommendation.

Accordingly, defendant Johnson's Motion for Summary Judgment (dkt. no. 23) is GRANTED. Judgment shall enter for the defendant.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOYCE PAUL,                 ) | |
|                    ) | |
|     Plaintiff,        ) | |
|                    ) | |
|       v.             ) | Civil Action No. 11-11574-GAO |
|                    ) | |
| MARTHA JOHNSON, ADMINISTRATOR,   ) | |
| General Services Administration     ) | |
|                    ) | |
|     Defendant.      ) | |

**REPORT AND RECOMMENDATION ON**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
(Docket No. 23)

February 26, 2013

Boal, M.J.

I.    **Introduction**

Plaintiff Joyce Paul ("Paul") brings this action against Defendant Martha Johnson ("Johnson"), Administrator, General Services Administration ("GSA") alleging that her supervisor and other managers discriminated against her in violation of Title VII, Civil Rights Act of 1964 ("Title VII") and/or the Age Discrimination in Employment Act ("ADEA") on the basis of her age, religion, gender, and her prior and current Equal Employment Opportunity ("EEO") activity.  Docket No. 1.  She alleges that such discrimination created a hostile work environment and forced her into early retirement.  Id.  On October 30, 2012, Johnson filed a

motion for summary judgment.[1]  The Court heard oral argument on February 13, 2013.  For the reasons contained herein, I recommend that the District Court grant the motion.

## II.  Factual And Procedural Background

### A.  Scope Of The Record

On October 30, 2012, Johnson filed a motion for summary judgment with an accompanying Local Rule 56.1 statement with citations to supporting documents.  Docket Nos. 23, 24-1.  On December 13, 2012, Paul filed her opposition to the motion.  Docket No. 27.  In her opposition, Paul did not include her own Local Rule 56.1 statement or respond to Johnson's statement.  On December 28, 2012, Johnson filed a reply to Paul's opposition that included an additional Local Rule 56.1 statement.  Docket No. 29.  In an effort to decide the case on the merits, on January 9, 2013, this Court issued an order that provided Paul with the opportunity to cure the deficiencies in her submission by disputing the facts contained in Johnson's Local Rule 56.1 statements and providing factual support for her version of each disputed fact.  Docket No. 30.

On January 24, 2013, Paul filed responses to Johnson's statements of facts.  Docket Nos. 36, 37.  The responses provided some citations to the record and attached eleven exhibits, including an exhibit that provided a list of the 92 exhibits Paul had attached to her opposition to Johnson's motion.  See Docket No. 36-1.  On February 6, 2013, Johnson file a reply that included a request to strike the portions of Paul's statements of disputed facts not supported by record citations.  Docket No. 38.

---

[1]  On September 10, 2012, the District Court referred the matter to this Court for full pretrial and dispositive motions.  Docket No. 14.

Pursuant to Local Rule 56.1, "a party opposing a motion for summary judgment must include a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation." In addition, copies of all referenced documentation should be filed as exhibits to the opposition. Uncontroverted statements of fact in the LR. 56.1 statement comprise part of the summary judgment record. See Cochran v. Quest Software, Inc., 328 F.3d 1, 12 (1st Cir. 2003) (plaintiff's failure to contest facts in LR. 56.1 statement caused fact to be admitted on summary judgment).

Pro se status does not insulate a party from complying with procedural and substantive law. Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997). Courts have frequently grappled with the tension between evenly enforcing the rules and working an injustice, especially in the summary judgment context. See, e.g., Szillery v. Career Systems Development Corp., No. 08-62, 2008 WL 2789492, * 2 (D. Me. July 17, 2008). However, courts have not typically freed pro se plaintiffs from the pleading burden set forth in Rule 56. Rollins v. Magnusson, No. 03-82, 2004 WL 3007090, * 3-4 (D. Me. December 28, 2004) (granting summary judgment against pro se defendant where response does not contain admissible evidence); Brennan v. Town of South Kingston, No. 10-186, 2011 WL 1898248, * 5 (D.R.I. April 14, 2011) (same); Bartlett v. American Power Conversion Corp., No. 05-084, 2006 WL 2709404, *2 n. 1 (D.R.I. September 20, 2006) (same). Nevertheless, even if the pro se plaintiff fails to respond to the statement of material fact, a court is still required to inquire as to whether the moving party has met its burden. Cordero-Soto v. Island Fin., Inc., 418 F.3d 114, 118 (1st Cir. 2005). Accordingly, in ruling on the motion, the Court will only consider those facts adequately supported by the

record, either through affidavits or the parties' exhibits.

Keeping this in mind, the following facts, unless otherwise noted, are undisputed. They are derived from the properly supported paragraphs contained in Defendant's statement of material facts and Paul's responses, as well as the attached exhibits. See Defendant's Local Rule 56.1 Statements of Undisputed Facts ("DFA" and "DFB") (Docket Nos. 24-1 and 29, respectively) and Plaintiff's Local Rule 56.1 Statements of Facts in Answer To Defendant's ("PFA" and "PFB") (Docket Nos. 36 and 37, respectively).

B.    Paul Begins Work at GSA

Paul, who is 65, began working at the GSA in 2000 and retired on February 27, 2009. DFA 3, PFA 3, DFB 5, PFA 5, Paul EEO Affidavit, p. 3 (Def.'s Ex. 1[2]) ("Paul Aff."). Paul worked as a Contract Specialist, GS-12, in the Property Development Division, GSA-Region 1 (New England), Public Building Service (PBS) in Boston, Massachusetts. DFB 1, PFB 1.

Ivan Lopez ("Lopez"), Chief, Project Management Branch, PBS, Region 1, began supervising Paul in April of 2006. DFA 4, PFA 4. Paul states that she was afraid of Lopez and went to speak to her union about it after her "first talk" with him. PFA 37. Paul asserts that Lopez continually criticized, scrutinized, and found fault with her work, that he criticized her for errors for which she was not responsible, and at one point reduced her to tears. PFB 4, PFB 8, Paul Aff., p. 5-6. The parties agree that Paul was subject to greater review than her peers. DFA 11, PFA 11. At some point after he became her supervisor, Lopez reduced Paul's number of telework days per week. DFA 12, PFA 12. The parties agree that Paul sent copies of all of her

---

[2] Defendant submitted two sets of exhibits with overlapping numbering. See Docket No. 24 (Exhibits 1-14), and Docket No. 29 (Exhibits 1-7). Unless indicated otherwise, references are to the exhibits attached to Docket No. 24.

4

work emails to Lopez, but Lopez asserts that he critiqued her emails and Paul claims that he did not because Lopez did not "know her work." DFA 13, PFA 13.

    C.    <u>Paul's Performance Reviews</u>

A GSA supervisor is required to provide at least one progress report and an annual performance appraisal to each employee in which he reviews that person's performance against expectations in critical elements identified for the employee's position. DFA 14, PFA 14. The performance appraisal gives ratings for each of the critical elements, although the parties dispute whether these are averaged to provide an overall summary rating. DFA 15, PFA 15. Level 1 is the lowest and Level 5 is the highest rating, with Level 2 reflecting only a partial meeting of the job's performance expectations. DFA 16, PFA 16. GSA policies strongly suggest supervisors develop corrective action plans and hold regular meetings with associates who are rated at a Level 2 for any of the critical elements in order to help the employees improve to a Level 3, the expected level of performance. DFA 18, PFA 18.[3]

In her fiscal year 2007 (October 2006 to September 2007) annual performance appraisal issued on October 29, 2007, Paul received a rating of 3 out of 5 from Lopez with comments identifying aspects of her performance that required improvement. Such aspects included her attention to normal work hours and contract modification procedures. DFB 7, PFB 7, Def.'s Ex. 6.[4] Paul submitted what she characterizes as an earlier version of the evaluation that includes

---

[3] Although Paul disagrees with the appropriateness of this method, she does not dispute the existence of the policy. DFA 18.

[4] Paul submitted an annual and a semi-annual performance appraisal from fiscal year 2005 that also reflects a rating of 3. Pl.'s Exs. 2-3. Paul received a Level 3 rating from her previous supervisor and Lopez for fiscal year 2006. Def.'s Ex. 5. Paul also submitted an April 19, 2006 letter to her previous supervisor taking issue with her Level 3 rating and stating that she

5

more positive comments and less negative comments in the Critical Elements portion of the evaluation. PFB 7, Pl.'s Ex. 6.[5]

In her fiscal year 2008 semi-annual performance rating issued on May 29, 2008, Lopez gave Paul a rating of Level 2 in three of the five critical elements. DFA 17, PFA 17, Def.'s Ex. 7. The assessment stated that Paul needed to improve her awareness of her project's phases, complete actions in accordance with deadlines, follow up with customer inquiries, and work on the clarity of her communications. Def.'s Ex. 7. In August 2008, Lopez put Paul on a Performance Assistance Plan ("PAP") as a result of her work performance from October 2007 - March 2008. DFA 19, PFA 19, DFB 8, PFB 9, Def.'s Ex. 9. Lopez asserts and Paul disputes that pursuant to the PAP, Lopez and Paul met every week to discuss how she could improve her work performance, and Lopez provided her with direct feedback on her ongoing work performance. DFB 9, PFB 9. The PAP stated that in accordance with GSA's new telework policy, Paul would not be permitted to work at home until Lopez was confident that her performance had improved to the Level 3 in every element. Def.'s Ex. 9 at p. 4; see also Def.'s Ex. 13 at p. 6, GSA Telework Policy (employees not allowed to telework when "their most recent performance rating of record is below fully successful [Level 3]" or "their performance as teleworkers results in diminished employee performance.").

On October 14, 2008, Paul received an Official Warning Notice from Lopez after she raised her voice during one of their weekly PAP meetings. DFB 10, PFB 10, Def.'s Ex. 6 (Docket No. 29). The letter stated that it would only appear in Paul's record for one year, after

---

should be rated a 5. Pl.'s Ex. 4.

   [5] The Comments portion of this evaluation is blank. See Pl.'s Ex. 6.

which it would be withdrawn from her official personnel folder. Def.'s Ex. 6 (Docket No. 29).
It also provided her with the opportunity to submit a written statement or explanation of her
actions to include in her official personnel folder. Id. Paul states that Lopez issued the warning
because management told him to do so. PFB 10.

On her fiscal year 2008 (October 2007 to September 2008) annual performance appraisal
issued on October 31, 2008, Paul again received a summary rating of Level 2. DFA 22, PFA 22,
Def.'s Ex. 8. The appraisal stated that Paul continued to make technical mistakes, have customer
service issues, written communication difficulties, and problems working independently. Id.
Paul asserts that it was not possible for her to adjust her performance from her August 2008 PAP
in time for her October 2008 review, and that this was used to pressure her to retire. PFA 14, 22.
On January 12, 2009, Lopez issued a second PAP, which also called for weekly meetings and did
not permit Paul to telework. DFA 22, PFA 22, Def.'s Ex. 10.

D.    Religious Discrimination Allegations

Paul states that her religion is non-denominational and that her pro choice stance on
abortion is religious in nature. Paul Aff., p. 3-4. Paul asserts that on an undisclosed date, two
men were discussing abortion near Lopez's office. PFA 7, Paul Aff., p. 4. Paul went to the men
and told them that she agreed with what they were saying. Id. As she went by Lopez's desk, he
said "abortion is murder." Id. Lopez did not say anything to the men and Paul had not said
anything to Lopez. Id. Lopez denies making such a statement or ever discussing abortion with
Paul. DFA 34.

E.    Age Discrimination Allegations

In 2008, Lopez had a team of associates who were all over the age of 40, except for one

7

person. DFA 24, PFA 24, Def.'s Ex. 12. Aside from Paul, the ratings for the associates over the age of 40 ranged from 3 to 5. DFA 25, PFA 25. Paul alleges that Lopez stated her age in one of their one-on-one meetings. DFA 35, PFA 35, Paul Aff., p. 4. Lopez denies knowing Paul's precise age prior to his meeting with an EEO counselor. DFA 36.

At an unidentified date, a facilitator at a GSA meeting stated that three-fourths of GSA employees were of retirement age. DFA 8, PFA 8. Paul argues that by this comment, the facilitator meant that having three fourths of the agency at retirement age put the agency at risk. PFA 8. Paul also argues that the facilitator stated that the agency needed to train and build a base for the future sustainability of the office. Id.

F.      Gender Discrimination Allegations

In 2008, Lopez supervised two other female contract specialists besides Paul, and these individuals received a rating of 4 or 5. DFA 23, PFA 23, Def.'s Ex. 12.[6] Paul alleges that Lopez treated her differently than the men, and that Lopez rolled his eyes and shook his head when he spoke about women. PFA 9, 10. Lopez denies that he treated some of his associates more favorably than others in the work setting. DFA 37.

G.      Allegations Of Discrimination Based On EEO Activity

1.      Activity Prior To Working At GSA

In 1987, Paul worked at Sikorsky Aircraft, a contractor for the Department of Defense. DFA 1, PFA 1. At some point during her time there, she filed an EEO claim against the Department of Defense and the Defense Contract Management Agency. DFA 2, PFA 2. Paul

---

[6] Paul states that there were more than two females, but she doesn't provide any further information. PFA 23. The chart for the employees in Lopez's group shows only three females including Paul. See Def.'s Ex. 12.

alleges that Lopez, like other GSA employees, knew of her past EEO claim and discriminated against her because of it. DFA 28, PFA 28, DFB 6, PFB 6. Paul asserts that her co-workers made numerous references to this EEO complaint while she was employed at the GSA and that it was well known at the GSA. PFA 5-6. In particular, she states that people made references to her work space at the GSA and compared it to the work space that she had at the time of her EEO complaint at Sikorsky. PFA 6.

        2.     <u>Activity During Employment At GSA</u>

Paul filed her EEO complaint on January 15, 2009, alleging discrimination by Lopez and the GSA based upon gender, age, religion and retaliation. DFB 12, PFB 12. In her EEO complaint, Paul cited four claims to substantiate her allegations of discrimination:

      A.     Lopez allegedly continuously criticized, scrutinized and found fault with Paul's work as a GS-12 Contracting Specialist and held Paul's work to a different standard than the other employees that he supervised ("Claim A");

      B.     On September 22, 2008, Lopez allegedly harassed Paul with his tone and attitude and treated her in a disparate manner ("Claim B");

      C.     On October 14, 2008, Paul received an Office Warning Notice from Lopez that remained in her personnel record for one year ("Claim C"); and

      D.     On October 31, 2008, Lopez gave Paul a substandard annual work performance appraisal rating of 2 ("Claim D").

DFB 3, PFB 3. Johnson asserts, and Paul disputes, that she withdrew Claim B from her EEO Complaint. DFB 4, PFB 4, Paul Aff. at p. 8 ("The second accepted issue, concerning September 22, is being dropped from this complaint.").

Paul alleges that on January 15, 2009, Lopez wrote "EEO activity" on the sign-out board when she was out of the office working on her EEO case. DFA 31, PFA 31, Paul Aff., p. 4. Paul submitted a email from Jerry Smith, GSA's Regional EEO Officer, stating that the reference to her EEO status had been removed from the board. Pl.'s Ex. 48. Lopez denies

knowing about Paul's current and former EEO activity prior to his initial meeting with the EEO

counselor related to Paul's recent EEO complaint.  DFA 29, PFA 29, DFA 32, PFA 32.

## III.   Analysis

### A.   Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). "A dispute is 'genuine' if the evidence about the fact is such that a reasonable jury could

resolve the point in the favor of the non-moving party." Sanchez v. Alvarad, 101 F.3d 223, 227

(1st Cir. 1996) (quotations and citations omitted).  A material fact is one which has "the potential

to affect the outcome of the suit under the applicable law." Id. (quotations and citations

omitted).

The moving party bears the initial burden of establishing that there is no genuine issue of

material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If that burden is met, the

opposing party can avoid summary judgment only by providing properly supported evidence of

disputed material facts that would require trial. See id. at 324. "[T]he non-moving party 'may

not rest upon mere allegation or denials of his pleading,'" but must set forth specific facts

showing that there is a genuine issue for trial. LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841

(1st Cir. 1993) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).

The court must view the record in the light most favorable to the non-moving party and

indulge all reasonable inferences in that party's favor. See O'Connor v. Steeves, 994 F.2d 905,

907 (1st Cir. 1993). "If, after viewing the record in the non-moving party's favor, the Court

determines that no genuine issue of material fact exists and the moving party is entitled to

10

judgment as a matter of law, summary judgment is appropriate." Walsh v. Town of Lakeville,

431 F. Supp. 2d 134, 143 (D. Mass. 2006).

"Even in employment discrimination cases 'where elusive concepts such as motive or

intent are at issue,' this standard compels summary judgment if the non-moving party 'rests

merely upon conclusory allegations, improbable inferences, and unsupported speculation.'"

Feliciano de la Cruz v. El Conquistador Resort and Country Club, 218 F.3d 1, 5 (1st Cir. 2000)

(citation omitted). The Court "is not obliged to accept as true or to deem as a disputed material

fact, each and every unsupported, subjective, conclusory, or imaginative statement made to the

Court by a party." Torrech-Hernandez v. General Electric Co., 519 F.3d 41, 47 (1st Cir. 2008).

"[T]he material creating the factual dispute must herald the existence of 'definite, competent

evidence' fortifying the plaintiff's version of the truth. Optimistic conjecture . . . or hopeful

surmise will not suffice." Hidalgo v. Overseas Condado Ins. Agencies, 120 F.3d 328, 338 (1st

Cir. 1997).

      B.    Title VII Claims

Title VII forbids discrimination against an employee because of race, color, religion, sex,

or national origin. 42 U.S.C. § 2000e-2(a). Title VII also prohibits discrimination because an

employee opposed, made charges, testified, assisted, or participated in enforcement proceedings.

42 U.S.C. § 2000e-3(a). Paul alleges that Lopez and GSA management violated Title VII when

they discriminated against her on the basis of her religion, gender and her prior and current EEO

activity and that this discrimination created a hostile work environment which resulted in her

constructive discharge.  Docket No. 27, p. 1; PFB 2.[7]

Because Paul has not produced direct evidence of discrimination, the Court will analyze her Title VII claims under the framework established by the Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), for each of her discrimination claims.  <u>See</u> <u>Rafalski v. Donahoe</u>, No. 10-40060, 2012 U.S. Dist. LEXIS 142969, at * 15 (D. Mass. Oct. 3, 2012) (gender); <u>Almeder v. Town of Bourne</u>, No. 11-11376, 2013 U.S. Dist. LEXIS 16246, at * 9  (D. Mass. February 6, 2013) (religion); <u>Vera v. McHugh</u>, 622 F.3d 17, 32 (1st Cir. 2010) (retaliation).  Generally under the <u>McDonnell Douglas</u> analysis, Paul first must establish a prima facie case of discrimination by showing that: (1) she is a member of a protected class; (2) she was qualified for the job; (3) and the employer took a materially adverse employment action against her.  Johnson may rebut this presumption of discrimination by articulating a legitimate, non-discriminatory reason for adverse employment action, and producing some credible evidence to support that reason.  <u>Id.</u>  "In order to rebut that presumption, the employer does not have the burden of persuasion, but must simply produce evidence of a legitimate, nondiscriminatory reason for the employment action."  <u>Vera</u>, 622 F.3d at 32.  Once the employer produces such evidence, "the presumption 'drops from the case' and the court must focus on the 'ultimate factual issue.'"  <u>Id.</u> at 32-33 (quoting <u>U.S. Postal Serv. Bd. of Governors v. Aiken</u>, 460 U.S. 711, 715 (1983)).

For each of her Title VII claims, Paul argues that she experienced the following adverse employment actions: (1) a 2 out of 5 rating on an annual performance appraisal; (2) loss of

---

[7] At oral argument, Paul alluded to allegations of sexual harassment and FMLA violations.  These allegations, even construing Paul's <u>pro se</u> complaint liberally, are not properly before the Court.

telework privileges; (3) humiliation; (4) failure to receive a yearly gain sharing award, and (5) a warning letter.[8]  Docket No. 27, p. 2-3; see gen. Paul Aff.[9]  For each claim, Johnson asserts that the legitimate, nondiscriminatory reason for the agency's actions was Paul's unsatisfactory work performance.  Docket No. 24, p. 9, 11, 16.  Accordingly, the ultimate issue is whether Paul has established a genuine issue of material fact that she experienced an adverse employment action because of her gender, religion, or EEO activity.

        1.    Gender Discrimination

        a.    Discrimination

In order to establish a prima facie case of gender discrimination, Paul must show that: (1) she is a member of a protected class; (2) she was qualified for the job; (3) and the employer took a materially adverse employment action against her.  Rafalski, 2012 U.S. Dist. LEXIS 142969 at * 15-16 (citing Bhatti v. Trustees of Boston Univ., 659 F.3d 64, 70 (1st Cir. 2011)).

On the basis of gender, Paul argues that she was discriminated against because she received a Level 2 rating, lost her telework privileges, and received a warning letter.  Docket No. 27, p. 2.  Johnson does not dispute that Paul has established a prima facie case for gender discrimination, and has articulated a legitimate, non-discriminatory reason for the agency's actions, namely Paul's unsatisfactory work performance.  Docket No. 24, p. 16.  Johnson then

_____

[8] Although Paul asserts in her opposition that she experienced humiliation as an adverse employment action, she does not identify a specific instance in which she was humiliated. Accordingly, the Court will view Paul's allegations of humiliation in the larger context of her hostile work environment claims. In addition, Paul has not provided evidence regarding a gain sharing award, and therefore the Court will not include this alleged adverse employment action in its analysis.

[9] While argued in her opposition, Paul made clear at oral argument that she is not seeking redress for a failure to promote claim.

argues that Paul has not created a genuine issue of material fact that Lopez's actions were a

pretext for gender discrimination. Docket No. 24, p. 15-16. This Court agrees.

Paul has not produced evidence that Lopez's actions were motivated by gender, nor

anything that would support an inference of such discrimination.[10] In fact, Paul does not dispute

that Lopez gave the other two female contract specialists a Level 4 or Level 5 rating for fiscal

year 2008, the same year that Paul received a Level 2 rating. Regarding telework, Paul herself

points to a female employee supervised by Lopez that received the telework she requested. DFA

26-27, PFA 26-27. Accordingly, the Court recommends that the District Court grant Johnson's

motion for summary judgment on this claim.

b.    Hostile Work Environment

Paul also claims that she was subjected to a hostile work environment based on her

gender. To establish a prima facie case for a hostile work environment claim, Paul must show:

(1) she is a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the

harassment was based upon gender; (4) the harassment was sufficiently severe or pervasive that

it altered the conditions of her employment and created an abusive working environment; (5) the

offending conduct was both objectively and subjectively offensive; and (6) some basis for

employer liability has been established. Tuli v. Brigham & Women's Hosp., 656 F.3d 33, 39

(1st Cir. 2011). Johnson argues that Paul has failed to establish a prima facie case because she

---

[10] Although Paul states in her opposition that all project managers at the GSA were males, who held higher grades than female contract personnel, she has provided no support for this statement, such as the names of these individuals, their departments, if they were supervised by Lopez, etc. See Docket No. 27, p. 35. In support of this statement, she does reference Exhibit 70, which appears to be a personnel summary for another female GSA employee who was a GS-13 contract specialist. Pl.'s Ex. 70. However, this person has a higher grade than Paul, received a Level 5 rating and a cash award, all of which appears to disprove her statement.

has not created a genuine issue of material fact that she was subjected to unwelcome harassment based on her gender or the alleged harassment was objectively and subjectively offensive. Docket No. 24, p. 14-15.

A plaintiff may recover on a hostile work environment theory when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal citations omitted). "[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all of the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance . . . [W]hile psychological harm, like any other relevant factor, may be taken into account, no single factor is required." Id. at 23. The conduct must be such that (1) a reasonable person would consider the work environment hostile and abusive and (2) the subject of the treatment must have perceived it as such. Id. at 21-22. However, "Title VII is neither a civility code nor a general anti-harassment code." Lee-Crespo v. Schering-Plough Del Caribe, Inc., 354 F.3d 34, 37 (1st Cir. 2003).

Paul has not provided evidence of any conduct that was objectively severe, physically threatening, or overtly offensive. Viewing the evidence in the light most favorable to Paul, she was subjected to greater supervision, received a temporary warning letter, lost her telework privileges, and Lopez criticized her work. "Toiling under a boss who is tough, insensitive, unfair, or unreasonable can be burdensome, but Title VII does not protect employees from the ordinary slings and arrows that suffuse the workplace every day." Ahern v. Shinseki, 629 F.3d

49, 59 (1st Cir. 2010) (internal quotation marks and citation omitted). Although unpleasant for Paul, these actions do not amount to an objectively hostile work environment actionable under Title VII. See Bhatti, 659 F.3d at 74 ("[W]here a workplace objectively falls short of that 'abusive' high-water-mark, it cannot sustain a hostile-work-environment claim."). Nor has Paul provided evidence to create a genuine issue of material fact that her allegedly hostile working environment was based on her gender. Accordingly, the Court recommends that the District Court grant Johnson's motion for summary judgment on this claim.

c.    Constructive Discharge

Paul also alleges that the discrimination she experienced forced her to retire early and she was therefore constructively discharged. Docket No. 27, p. 1. "Constructive discharge" usually refers to "harassment so severe and oppressive that staying on the job while seeking redress -- the rule save in exceptional cases -- is 'intolerable.'" Lee-Crespo, 354 F.3d at 45 (internal citations omitted). To establish a constructive discharge, Paul must "show that her working conditions were so difficult or unpleasant that a reasonable person in [her] shoes would have felt compelled to resign." Id. (quoting Marrero v. Goya of P.R., Inc., 304 F.3d 7, 28 (1st Cir. 2002)). "The standard is an objective one; an employee's subjective perceptions do not govern." Id. "A plaintiff seeking to withstand summary judgment must point to evidence in the record showing that [intolerable working conditions] existed." Gerald v. Univ. of P.R., No. 11-2143, 2013 U.S. App. LEXIS 1925, at * 44 (1st Cir. January 28, 2013). "Absent some showing that gender-based discrimination polluted the workplace, . . . the constructive discharge claim must fail." Ahern, 629 F.3d at 59.

Paul argues that her increased supervision, Level 2 rating, lack of telework, and Lopez's

criticisms forced her to retire.  Even viewing these allegations in the light most favorable to Paul,
she has not produced evidence sufficient to establish that these actions objectively created an
environment that compelled her to retire.  Accordingly, the Court recommends that the District
Court grant Johnson's motion for summary judgment on this claim.

     2.    <u>Religious Discrimination</u>

     a.    <u>Disparate Treatment</u>

Paul alleges that she was discriminated against based on her religion.  Viewed within the
<u>McDonnell Douglas</u> framework, a religious connection to employment events is obviously
critical.  <u>See</u> <u>Sabinson v. Trs. of Dartmouth College</u>, 542 F.3d 1, 5 (1st Cir. 2008) (affirming
summary judgment where employer's judgment regarding employee "show[ed] no plausible taint
of having been made on grounds of . . . religion.").  Johnson argues that Paul has not established
a prima facie case for religious discrimination because she has not provided sufficient evidence
that she is part of a protected class or that the agency's actions were pretextual.  Docket No. 24,
p. 4-6, 9.

     i.    <u>Protected Class</u>

Paul states that her religion is non-denominational and that her pro choice stance on
abortion is religious in nature.  Paul Aff., p. 3-4.  She also reports that her religion is based on
"personal growth" and "not harming other people."  Docket No. 27, p. 2.  Johnson argues that
these beliefs are not a religion protected by Title VII.  Docket No. 24, p. 4-6.

Title VII's definition of "religion" includes "all aspects of religious observance and
practice, as well as belief . . . ."  42 U.S.C. § 2000e(j); <u>see</u> <u>also</u> 29 C.F.R. § 1605.1 ("Religious
practices . . . include moral or ethical beliefs as to what is right and wrong which are sincerely

held with the strength of traditional religious views."). "Religious beliefs protected by Title VII

need not be 'acceptable, logical, consistent, or comprehensible to others . . . .'" EEOC v. Union

Independiente De La Autoridad De Acueductos Y Alcantarillados De P.R., 279 F.3d 49, 56 (1st

Cir. 2002) (quoting Thomas v. Review Bd. of Ind. Employment Sec. Div., 450 U.S. 707, 714

(1981)). "The statute thus leaves little room for a party to challenge the religious nature of an

employee's professed beliefs." Id. Although Title VII does not afford protection for "what

amounts to a purely personal preference . . . a court is bound to confront the near impossibility

(at least at the summary judgment stage) of distinguishing between a plaintiff's strongly felt

personal preference and that same plaintiff's self-styled 'religious' belief." Cloutier v. Costco

Wholesale, 311 F. Supp. 2d 190, 197 (D. Mass. 2004), affirmed, 390 F.3d 126 (1st Cir. 2004)

(internal citations and quotation marks omitted). Indeed, "at the summary judgment stage, the

defendant will ordinarily face a difficult task in challenging the contention that the plaintiff's

belief is religious, no matter how unconventional the asserted religious belief may be." Id. at

196. For purposes of a discrimination analysis, an "employee's religious beliefs need not be

espoused by a formal religion or conventional organized church." Id. Accordingly, the Court

will assume for the purposes of this motion that Paul has established that she is a member of a

protected class.

ii.     Pretext

Johnson asserts that the legitimate, nondiscriminatory reason for the agency's actions was

Paul's unsatisfactory work performance and that she has not created a genuine issue of material

fact that Lopez's actions against her were pretextual. Docket No. 24, p. 9. This Court agrees.

The only evidence Paul puts forth to support her religious discrimination claim is that Lopez told

her that abortion was "murder." Even assuming that this in fact occurred and that the statement

contained a religious expression, Paul has not provided evidence to support an inference that this

comment is causally connected to any of Lopez's actions. In fact, Paul has not provided the date

of the event, which further undermines its plausible connection to Lopez's actions. Because Paul

has not shown that Lopez's judgment regarding her performance was made on grounds of

religion, this Court recommends that the District Court grant Johnson's motion for summary

judgment on this claim.

        b.     Hostile Work Environment

To prove a religious harassment/hostile work environment claim, Paul must establish,

inter alia, that: (1) the uninvited harassment was because of her religion and sufficiently severe

or pervasive to affect the terms and conditions of employment; (2) the offending conduct was

both objectively and subjectively offensive; and (3) there is a basis for employer liability.

Johnson v. Spencer Press of Me., Inc., 364 F.3d 368, 376 (1st Cir. 2004) (citing Rivera v. P.R.

Aqueduct & Sewers Auth., 331 F.3d 183, 189 (1st Cir. 2003) and O'Rourke v. City of

Providence, 235 F.3d 713, 728 (1st Cir. 2001)). Johnson argues that Paul's claim fails because

she has not provided sufficient evidence that: (1) the alleged discrimination was because of her

religion; and (2) she experienced a sufficiently severe or pervasive discriminatory environment.

Docket No. 24, p. 4-8.

        i.     Severe And Pervasive

Whether the harassment Paul experienced was severe or pervasive "must be answered by

reference to 'all the circumstances,' including the 'frequency of the discriminatory conduct; its

severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and

whether it unreasonably interferes with an employee's work performance.'" Johnson, 364 F.3d at 377 (quoting Marrero, 304 F.3d at 18). As stated supra, Paul has not created a genuine issue of material fact that the alleged harassment she experienced – increased supervision, a Level 2 rating, loss of telework, or a warning letter – was so objectively severe and pervasive as to alter the conditions of her employment.

### ii.     Based On Religion

Finally, Paul must demonstrate a trial worthy issue that the alleged conduct was, in either character or substance, discrimination because of religion. Rivera, 331 F.3d at 189-90 (insufficient evidence of religious discrimination despite persistent taunting). As with Paul's disparate treatment claim, Paul has not provided evidence that any of the allegedly adverse actions were motivated by religious discrimination. Put simply, the evidence presented does not permit an inference that the tense relations between Lopez and Paul were caused by religious discrimination. Accordingly, the Court recommends that the District Court grant Johnson's motion for summary judgment of Paul's religious harassment claim.

### c.      Constructive Discharge

As stated supra, in order to prevail on a claim for constructive discharge, Paul must prove that she was subjected to discriminatory treatment or harassment that was "so severe and oppressive" that staying on the job while seeking redress would be intolerable, and that she suffered more than "the ordinary slings and arrows that workers routinely encounter in a hard, cold world." Ara v. Tedeschi Food Shops, Inc., 794 F. Supp. 2d 259, 264 (D. Mass. 2011) (citing Lee-Crespo, 354 F.3d at 45). As stated above, Paul has not established that her increased supervision, Level 2 rating, lack of telework, or Lopez's criticism were objectively severe and

pervasive so that staying at work would have been intolerable. Accordingly, the Court recommends that the District Court grant Johnson's motion for summary judgment on this claim.

      3.    Retaliation For EEO Activity

Paul also alleges that Lopez and other GSA management retaliated against her for her former and current EEO activity. "Title VII expressly forbids not only direct discrimination, but also retaliation against an individual who has complained about discriminatory employment practices." Velazquez-Ortiz v. Vilsack, 657 F.3d 64, 72 (1st Cir. 2011); see also 42 U.S.C. § 2000e-3(a).[11] In order to establish a prima facie case of retaliation, Paul must show that: (1) she engaged in protected activity; (2) she was the subject of an adverse employment action; and (3) the action was causally linked to her involvement in the protected activity. Id.

      a.    1998 EEO Complaint

Johnson argues that Paul cannot establish a causal connection between her 1998 EEO complaint and the allegedly adverse employment actions because the approximately twenty year time span between these events is too great. Docket No. 24, p. 17-18. As detailed below, this Court agrees.

Causal connection may be inferred from a very close temporal relationship between the protected activity and the adverse action. Velazquez-Ortiz, 657 F.3d at 72. However, "[t]he inference of a causal connection becomes tenuous with the passage of time." Dressler v. Daniel, 315 F.3d 75, 80 (1st Cir. 2003) (two year gap between protected conduct and alleged retaliation); see also Velazquez-Ortiz, 657 F.3d at 72-3 (six years between previous EEO complaint and

---

[11] Although Title VII contains no parallel prohibition applicable to the federal sector, the First Circuit has held that various provisions of Title VII operate, either alone or in concert, to the same effect. Velazquez-Ortiz, 657 F.3d at 72.

current EEO complaint insufficient to establish inference of causation); Clark County School District v. Breeden, 532 U.S. 268, 274 (2001) ("Action taken . . . 20 months later suggests, by itself, no causality at all."); Mesnick v. General Elec. Corp., 950 F.2d 816, 828 (1st Cir. 1991) (ADEA claim) (holding that a nine month period between the protected conduct and alleged retaliation undermined the inference of causation). In this case, Paul asserts that Lopez and others at the GSA discriminated against her for a EEO complaint she filed nearly twenty years ago. For example, she states that Lopez and her co-workers made comments about her prior EEO complaint. Even assuming that this is true, such assertions are insufficient to sustain her claim. "In showing a causal link between protected activity and an adverse employment action, a plaintiff must produce something more than a few weak inferences to surmount the summary judgment hurdle, particularly where events are widely separated in time." Espinal v. Nat'l Grid NE Holdings 2, LLC, 794 F. Supp. 2d 285, 296 (D. Mass. 2011) (citing Lewis v. Gillette Co., 22 F.3d 22, 25 (1st Cir. 1994)). Looking at "the total package of proof offered by the plaintiff," see Vera, 622 F.3d at 33, this Court finds that Paul has not provided sufficient evidence for a reasonable jury to conclude that she experienced adverse employment actions because of her former EEO complaint. Accordingly, the Court recommends that the District Court grant Johnson's motion for summary judgment on this claim.

      b.      January 15, 2009 EEO Complaint

Johnson argues that Paul's retaliation claim regarding her January 15, 2009 EEO complaint fails because she has not established that she experienced a casually connected adverse employment action. Docket No. 24, p. 18-19. "As with a claim for discrimination, a plaintiff alleging workplace retaliation must prove, among other things, that he suffered an

'adverse employment action' on account of a protected activity." Morales-Vallellanes v. Potter, 605 F.3d 27, 36 (1st Cir. 2010). However, "the antiretaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment." Id. (citing Burlington Northern & Santa Fe Ry. v. White, 548 U.S. 53, 64 (2006); Billings v. Town of Grafton, 515 F.3d 39, 54 (1st Cir. 2008)). "Rather, a plaintiff may satisfy this requirement by showing that "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Id. (quoting Burlington Northern, 548 U.S. at 64).

Paul filed her current EEO complaint on January 15, 2009. However, all of the alleged adverse employment actions, e.g. her increased supervision, her warning letter, her loss of telework, her Level 2 rating, occurred before she filed her EEO complaint. Paul states, and Lopez disputes, that Lopez placed "EEO" activity on the office sign-out board. Assuming for the purposes of this motion that Paul's version of events is true, Paul has not provided any evidence to support that this action, either by itself or in concert with events subsequent to her EEO complaint, was adverse in that it might have "dissuaded a reasonable worker from making or supporting a charge of discrimination." Compare Holloway v. Dept. of Veterans Administration, 309 Fed. Appx. 816, 819 (5th Cir. 2009) (supervisor's mention of an employee's EEO complaints does not itself constitute a material adverse action), with Marinelli v. Potter, 661 F. Supp. 2d 69, 74, 79 (1st Cir. 2009) (supervisor's reference to EEO complaint, in context of a campaign of harassment, sufficiently adverse). In addition, she has not provided evidence that adverse consequences followed from Lopez's statement on the whiteboard. Accordingly,

23

the Court finds that Paul has not produced evidence sufficient to establish that she experienced an adverse employment action as a result of her January 15, 2009 EEO activity, and recommends that the District Court grant Johnson's motion for summary judgment on this claim.

     C.     <u>ADEA Claim</u>

          1.     <u>Discrimination</u>

Paul alleges that Lopez and others at GSA discriminated against her because of her age and created a hostile work environment that forced her to retire early. Docket No. 27, p. 1-2. Pursuant to the ADEA, an employer is prohibited from taking an adverse employment action against an employee who is forty years of age or older because of that employee's age. <u>See</u> 29 U.S.C. §§ 623(a)(1), 631(a). In alleging a violation of the ADEA, Paul "must shoulder the ultimate burden of proving that [her] years were the determinative factor in [her] discharge, that is, that [s]he would not have been fired but for [her] age." <u>Torrech-Hernandez v. General Electric Co.</u>, 519 F.3d 41, 48 (1st Cir. 2008) (quoting <u>Davila v. Corporacion De P.R. Para La Difusion Publica</u>, 498 F.3d 9 (1st Cir. 2007)) (internal quotation marks omitted). Because Paul has not presented direct evidence of age discrimination, she may also utilize the <u>McDonnell Douglas</u> burden-shifting framework to carry her burden. <u>Id.</u> (citing <u>McDonnell Douglas Corp</u>, 411 U.S. at 802-05).

To establish a prima facie case of age discrimination, Paul must set forth facts showing that: (1) she was at least forty years old at the time of the adverse employment action complained of; (2) her job performance met or exceeded the employer's legitimate expectations; (3) her employer actually or constructively discharged her; and (4) her employer had a continuing need for the services she had been performing. <u>Id.</u>

Paul argues that her receipt of a 2 rating and her loss of telework privileges forced her to retire and therefore constitutes a constructive discharge. Docket No. 27, p. 31-32. Johnson argues that Paul's claim fails because (1) she cannot establish that she was constructively discharged and (2) she has not created a genuine issue of material fact that the GSA's motivations were pretextual. Docket No. 24, p. 10-14.

"It is well-established that '[j]ust as the ADEA bars an employer from dismissing an employee because of his age, so too it bars an employer from engaging in a calculated, age-inspired effort to force an employee to quit." Torrech-Hernandez, 519 F.3d at 50 (quoting De La Vega v. San Juan Star, Inc., 377 F.3d 111, 117 (1st Cir. 2004)). To prove constructive discharge under the ADEA, Paul must usually "show that her working conditions were so difficult or unpleasant that a reasonable person in her shoes would have felt compelled to resign." Id. "The question is not whether working conditions at the facility were difficult or unpleasant," but rather, Paul must show that, at the time of her retirement, her employer "did not allow [her] the opportunity to make a free choice regarding [her] employment relationship." Id. (quoting Exum v. U.S. Olympic Comm., 389 F.3d 1130, 1135 (10th Cir. 2004)). "Thus, in order for a resignation to constitute a constructive discharge, it effectively must be void of choice or free will." Id.; see also Vega v. Kodak Caribbean, Ltd., 3 F.3d 476, 480 (1st Cir. 1993) (constructive discharge exists where employer's actions "effectively vitiate the employees' power to choose work over retirement"). An employee "may not be unreasonably sensitive to his [or her] working environment." Id. at 52 (quoting Calhoun v. Acme Cleveland Corp., 798 F.2d 558, 561 (1st Cir. 1986)). The standard for assessing a constructive discharge claim "is an objective one: it is not triggered solely by the employee's subjective beliefs, no matter how

sincerely held." Id. (quoting Marrero, 304 F.3d at 28).

As stated supra, "[i]t is not enough that the plaintiff suffered the ordinary slings and arrows that workers routinely encounter in a hard, cold world." Id. at 50. In other words, Paul must show that conditions were so intolerable that they transformed a seemingly voluntary resignation into a termination. Id. As with her Title VII claims, Paul has not provided evidence that could allow a rational trier of fact to infer that Lopez or anyone at the GSA deliberately created conditions so difficult or unpleasant for her that she would have felt compelled to resign. Nor is there any basis to conclude that a reasonable employee standing in Paul's shoes would have believed that her termination was imminent. For example, the critiques in Paul's evaluations were accompanied by suggestions for ways for her to improve her performance. See Def.'s Exs. 6-7.

Even assuming, arguendo, that Paul established a prima facie case for age discrimination as a result of a constructive discharge, Paul has not created a genuine issue of material fact that Lopez's actions were a pretext for age discrimination. As evidence of age animus, Paul argues that Lopez referenced her age in at least one of their meetings at an undisclosed time. PFA 35, Paul Aff., p. 4. This argument is, by itself, insufficient to create an inference of discriminatory animus based on age. See Gonzalez v. El Dia, Inc., 304 F.3d 63, 69 (1st Cir. 2002) ("[S]tray workplace remarks . . . normally are insufficient, standing alone, to establish either pretext or the requisite discriminatory animus."). Even assuming that the stating of Paul's age, with nothing more, would give an inference of discrimination, Lopez's treatment of his other employees over the age of 40 undercuts Paul's argument of pretext. Paul does not dispute the fact that, aside from Paul, Lopez's ratings for his associates over the age of 40 ranged from 3 to 5. DFA 25,

26

PFA 25.

Paul also argues that a statement by a GSA facilitator that three fourths of the GSA work force was retirement age is evidence of discriminatory animus. PFA 8. Paul argues that by this comment, the facilitator meant that the large percentage of employees at retirement age put the agency at risk. Id. However, the Court is "not obliged to take at face value [plaintiff's] subjective beliefs when they are not factually based and merely constitute conclusory, self-serving statements." Torrech-Hernandez, 519 F.3d at 48 n. 1. "[P]ersonal opinion, unsupported by fact, is not sufficiently probative on the issue of pretext." Id. at 53-4. Further, this remark "is not only profoundly ambiguous, but also much too innocuous to transform routine managerial decisions into something more invidious." Suarez v. Pueblo Intern'l Inc., 229 F.3d 49, 56 (1st Cir. 2000). Finally, Paul has provided no evidence that the GSA facilitator was a decision maker regarding her employment. "[S]tatements made either by non-decisionmakers or by decisionmakers not involved in the decisional process, normally are insufficient, standing alone, to establish either pretext or the requisite discriminatory animus." Melendez v. Autogermana, Inc., 622 F.3d 46, 54 (1st Cir. 2010) (quoting Gonzalez, 304 F.3d at 69). Accordingly, Paul has not created a genuine issue of material fact that she was discriminated against based on her age, and the Court recommends that the District Court grant Johnson's motion for summary judgment on this claim.

### 2. Hostile Work Environment

To prove a hostile work environment claim under the ADEA, Paul must provide sufficient evidence from which a reasonable jury could conclude that the offensive conduct "is severe and pervasive enough to create an objectively hostile or abusive work environment and is

27

subjectively perceived by the victim as abusive." <u>Rivera-Rodriguez v. Frito Lay Snacks</u> <u>Caribbean</u>, 265 F.3d 15, 24 (1st Cir. 2001) (quoting <u>Landrau-Romero v. Banco Popular De</u> <u>Puerto Rico</u>, 212 F.3d 607, 613 (1st Cir. 2000)). "When assessing whether a workplace is a hostile environment, courts look to the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is threatening or humiliating, or merely an offensive utterance; and whether it unreasonably interferes with the employee's work performance." <u>Id.</u> As with her Title VII claims, Paul has not established that she was working in a hostile or abusive environment based on her age. Viewing the record in the light most favorable to Paul, she did well in certain aspects of her employment, but not in others. She has not established that her rating, and its accompanying increased supervision and loss of telework privileges, were based on considerations of age. Accordingly, Paul has not established that she experienced a hostile working environment based on her age, and Court recommends that the District Court grant Johnson's motion for summary judgment on this claim.

## IV.   CONCLUSION

Taking the evidence presented in the light most favorable to Paul and granting all inferences in her favor, Paul had a difficult time working with Lopez and believes that she received a rating that did not reflect her abilities and resulted in a loss of telework. "But, whether or not personal or professional hostility played a role in the assessment, federal law does not protect generally against arbitrary or unfair treatment . . . but only against actions motivated by listed prejudices such as race, age and gender." <u>Sabinson</u>, 542 F.3d at 4. "Discrimination is a form of unfairness; but not all unfairness is discrimination." <u>Id.</u> For the foregoing reasons, while her work environment was no doubt unpleasant for her, Paul has not created a genuine

issue of material fact that Lopez or anyone at the GSA discriminated against her on the basis of age, gender, religion, or in retaliation for EEO activity. Accordingly, I recommend that the District Court grant Defendant's motion for summary judgment.

## V.   REVIEW BY DISTRICT JUDGE

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Civ. P. 72. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Phinney v. Wentworth Douglas Hospital,199 F.3d 1 (1st Cir. 1999); Sunview Condo. Ass'n v. Flexel Int'l, 116 F.3d 962 (1st Cir. 1997); Pagano v. Frank, 983 F.2d 343 (1st Cir.1993).

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge